PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

CORRINE A. LYNN, *etc.*, *et al.*,           )
                                             )        CASE NO.  4:19CV1735
            Plaintiffs,                      )
                                             )        JUDGE BENITA Y. PEARSON
        v.                                   )
                                             )
LIBERTY TOWNSHIP, OHIO, *et al.*,            )        **MEMORANDUM OF OPINION**
                                             )        **AND ORDER**
            Defendants.                      )        [Resolving ECF Nos. 14 and 20]


        Pending is Defendants Liberty Township, Richard Tisone, Arnie Clebone, and Greg

Cizmar's Motion for Judgment on the Pleadings (ECF No. 14).  Also pending is Defendants

Police Chief Toby Meloro and Police Captain Steve Shimko's Motion for Judgment on the

Pleadings (ECF No. 20).  The Court has been advised, having reviewed the record, the parties'

briefs, and the applicable law.  For the reasons set forth below, the motions are granted.[1]

### I. Background

        Plaintiffs Corrine A. Lynn, individually and as Executrix of the Estate of  Loraine S.

Lynn, and Samantha R. Lynn claim Defendants Liberty Township, Richard Tisone, Arnie

Clebone, Greg Cizmar, Police Chief Toby Meloro, and Police Captain Steve Shimko failed to

properly investigate the death of their mother, Loraine S. Lynn.  Plaintiffs pursue violations of

their federally protected rights under 42 U.S.C. §§ 1983 and 1985.  They allege the criminal

investigation into Loraine Lynn's death was inadequate, violated their substantive due process

---

        [1] Thus, the Court need not approve the parties' proposed Stipulated Protective
Order (ECF No. 21).

rights, and marred any hope of justice for the family.  Plaintiffs also allege that the police ignored

evidence of possible criminal activity, did not immediately contact the county coroner or county

sheriff's office, and took no action when Samantha Lynn reported her concerns of a possible

murder motive -- that a family feud led to her mother's death.  Plaintiffs assert that thousands of

dollars were spent on a private investigation into the death, along with $3,000 that was paid to a

consultant to investigate the tractor, funeral expenses, and more than $3,000 for signs and

billboards seeking tips from the public about the homicide.

Loraine Lynn's body was found on August 2, 2017, on a small tractor partially submerged

in a pond located on her mother's farm.  The decedent's neck had a black and blue mark on it and

was swollen.  She had been missing since the day before, and was found by her brother, Howard

J. "Chip" Pullin, III, and her ex-husband, Timothy Lynn.  Police officials arrived on scene by

7:33 a.m. on August 2.  Meloro, a Captain at the time of the incident, and Capt. Shimko

supervised and directed the initial investigation.  The police closed the case by 12:12 p.m. on

August 2, concluding a farming accident had occurred.  But the decedent's family remained

suspicious because Loraine Lynn had operated heavy machinery for decades.  The Trumbull

County, Ohio Coroner subsequently ruled Loraine Lynn's death a homicide.  According to

Plaintiffs, the Coroner told them that Loraine Lynn had no water in her lungs and had apparently

died before entering the water.

Plaintiffs allege interviews of the family were not taken, and security footage that showed

Loraine Lynn's car pulling back into her mother's property was not viewed in its entirety.

According to Plaintiffs, the decedent's car had uncharacteristically been parked behind a barn

that had glass, metal and other rubbish around it, out of sight of the cameras.  Plaintiffs allege

Capt. Meloro did not process the car for any evidence, including for DNA or fingerprints.

Tisone, who had been the Township Police Chief at the time of the incident, ordered an

internal investigation into Capt. Meloro for the handling of the investigation.  The investigation

found the tractor had not been properly processed for evidence.  After the internal investigation,

Tisone recommended that Meloro receive discipline.  He did not.  Instead, Trustees Clebone and

Cizmar promoted him to be police chief in August 2018 when Tisone retired.

## II.  Standard of Review

The procedural standard for determining a judgment on the pleadings under Fed. R. Civ.

P. 12(c) is indistinguishable from the standard of review for dismissals based on failure to state a

claim under Fed. R. Civ. P. 12(b)(6).  *U.S ex rel. Bledsoe v. Community Health Systems, Inc.*,

342 F.3d 634, 643 (6th Cir. 2003); *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th

Cir. 2001) (citing *Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir. 1999)).  In deciding a motion

to dismiss pursuant to Rule 12(b)(6), or a motion for judgment on the pleadings under Rule

12(c), the Court must take all well-pleaded allegations in the complaint as true and construe those

allegations in a light most favorable to the plaintiff.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

(citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"While legal conclusions can provide the framework of a complaint, they must be supported by

factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing authorities).

In other words, claims set forth in a complaint must be plausible, rather than conceivable. *Id.* at 570. "[When] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). The factual allegations in the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, p. 235-236 (3d ed. 2004)). In addition to reviewing the claims set forth in the complaint, a court may also consider exhibits, public records, and items appearing in the record of the case as long as the items are referenced in the complaint and are central to the claims contained therein. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *Erie County, Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 863 (6th Cir. 2012).

### III. Analysis

Plaintiffs claim Defendants "acted in a way to bar anyone from collecting evidence to use to attempt to prosecute anyone" and that "the prosecuting attorney has not charged anyone yet."

ECF No. 24 at PageID #: 162.  Citing to *Culberson v. Doan*, 125 F. Supp.2d 252, 268 (S.D. Ohio 2001), and *Smith v. City of Elyria*, 857 F. Supp. 1203, 1210 (N.D. Ohio 1994) (Wells, J.), Plaintiffs refer to claims that exist "where the government takes, 'some action which places the victim in a dangerous position, or increases the potential danger, or deprives the victim of his or her ability to use self-help."  ECF No. 24 at PageID #: 153.  Plaintiffs go on to describe the deliberate, affirmative steps the law enforcement officers allegedly took that harmed the plaintiffs in those cases.  However, Plaintiffs misconstrue the nature of the right allegedly deprived in the case at bar.  They claim that they have alleged "deliberate, affirmative actions" (ECF No. 24 at PageID #: 158).  They have not, however, alleged a constitutional right violated by those actions.

Because Loraine Lynn's civil rights terminated at her death, Plaintiffs Corrine A. Lynn and Samantha R. Lynn must establish a deprivation of their own rights under the Constitution or laws of the United States.  *Guyton v. Phillips*, 606 F.2d 248, 250 (9th Cir.1979) (holding that §§ 1983 and 1985 do not provide a cause of action on behalf of a decedent based upon an alleged violation of the deceased's civil rights that occurred after his death), *cert. denied*, 445 U.S. 916 (1980).  Plaintiffs, "as crime victims and as survivors of a wrongful death," ECF No. 24 at PageID #: 161, rely on Ohio statutory law, suggesting Ohio Rev. Code §§ 2935.09(D), 2935.10(A) and 305.14(A) create a liberty interest in a competent investigation and prosecution that is protected by the Due Process Clause.  Mere allegations of state law violations, however, are insufficient to state a claim under § 1983.  *Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989).

A plaintiff can establish a substantive due process violation by demonstrating either a deprivation of a particular constitutional right or an action that "shocks the conscience." *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 769 (6th Cir. 2005) (citing *Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1474 (6th Cir. 1993)).  Substantive due process requires the deprivation of a "fundamental right." *Callihan v. Sudimack*, No. 96-3711, 1997 WL 397212, at *3 (6th Cir. July 10, 1997) (*per curiam*) (dismissal by district court for failure to state a claim affirmed in action arising out of the defendants' alleged failure to discover the true cause of death of the plaintiffs' family member).  Relatives of a decedent do not have a " 'fundamental' or explicit, right under the Constitution" to the criminal investigation and prosecution of the homicide and thereby do not have a substantive due process claim for failures associated with a criminal investigation and prosecution. *Id.*  In *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748 (2005), the United States Supreme Court held "the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations.  This result reflects our continuing reluctance to treat the Fourteenth Amendment as 'a font of tort law.' " *Id.* at 768 (citation omitted).  "There is no statutory or common law

right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007);[2] *see also Seigel v. City of Gernantown*, 25 Fed.Appx. 249, 250 (6th Cir. 2001) ("[A] finding of incompetent or negligent investigation . . . is insufficient to establish a constitutional violation."). The undersigned has, in a prior ruling, determined that, "Plaintiff has no constitutional right to investigation and prosecution." *Weaver v. Moamis*, No. 4:14CV0311, 2014 WL 4425742, at *3 (N.D. Ohio Sept. 8, 2014) (Pearson, J.) (citing *Miller v. Dowagiac Police Dept.*, No. 96-2141, 1997 WL 640127, at *3 (6th Cir. Oct. 14, 1997), and *Pusey v. Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993)).

Nevertheless, Plaintiffs assert that Defendants' conduct "shocks the conscience" in violation of their substantive due process rights. ECF No. 24 at PageID #: 164-65. The Court of Appeals for the Sixth Circuit has limited the application of the "shocks the conscience" standard in § 1983 cases not involving physical force. *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 566 Fed. Appx. 462, 472 (6th Cir. 2014). The case at bar does not involve any allegations of

---

[2] Plaintiffs rely on *Daniels v. Williams*, 474 U.S. 327, 331 (1986), a case in which the Supreme Court has made clear that the Due Process Clause protects the individual against " 'the arbitrary exercise of the powers of government.' " *Id.* at 331 (quoting *Hurtado v. California*, 110 U.S. 516, 527 (1884) (quoting *Bank of Columbia v. Okely*, 4 Wheat. (17 U.S.) 235, 244 (1819)). It also protects against any oppressive use of governmental power. *Id.* at 331-32 (cite omitted). *Daniels* was cited by the Court of Appeals in *Mitchell*, 487 F.3d at 377, but the Sixth Circuit still found unavailing plaintiffs' second theory of due process liability -- that the defendants failed to investigate the accident adequately.

physical force.  This resistance was explained in *Braley v. City of Pontiac*, 906 F.2d 220 (6th Cir. 1990), when the Sixth Circuit advised discreet and judicious application of the "shock the conscience" standard in relation to police conduct, stating:

> Applying the "shock the conscience" test in an area other than excessive force, however, is problematic.  Not only are there fewer instances in the case law, but the "shock the conscience" test is not as uniformly applied to cases where excessive force or physical brutality is not the basis of the claim.  The "shock the conscience" standard, fuzzy under the best of circumstances, becomes fuzzy beyond a court's power to interpret objectively where there is a dearth of previous decisions on which to base the standard.  We doubt the utility of such a standard outside the realm of physical abuse, an area in which the consciences of judges are shocked with some degree of uniformity.

*Id.* at 226.  Assuming *arguendo* the "shocks the conscience" standard is applicable to the case at bar, the Court finds the alleged actions of Defendants do not "shock the conscience."  The alleged actions of Defendants, while subject to debate, are not the type of brutal and inhumane acts that have shocked the conscience of courts in the past.  Plaintiffs have therefore failed to state a substantive due process claim.

Because no constitutional violation has been shown, Plaintiffs' *Monell* claim cannot survive as a matter of law.  "[When] no constitutional violation occurred, there can be no *Monell* claim against the [Township], regardless of its policies."  *Farinacci v. City of Garfield Hts.*, No. 1:08CV1355, 2010 WL 1268068, at *5 (N.D. Ohio March 30, 2010) (O'Malley, J.), *aff'd*, 461 Fed.Appx. 447 (6th Cir. 2012); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) ("There can be no liability under *Monell* without an underlying constitutional violation.").

Finally, a § 1985 conspiracy claim requires at least one cognizable § 1983 claim. *See,* *e.g. Bain-Silva v. Tenn. Dept. of Safety*, No. 3:08-cv-99, 2009 WL 1322869, at *12 (M.D.Tenn. May 8, 2009) ("Because there was no constitutional violation, Defendants likewise cannot be liable under § 1985 for conspiring to violate Plaintiff's constitutional rights."). This claim also fails.

### IV. Conclusion

Finding that Plaintiffs have failed to demonstrate that they were denied a right secured by the Constitution or laws of the United States -- an essential element of §§ 1983 and 1985 claims,

Defendants Liberty Township, Richard Tisone, Arnie Clebone, and Greg Cizmar's Motion for Judgment on the Pleadings (ECF No. 14) is granted.

Defendants Police Chief Toby Meloro and Police Captain Steve Shimko's Motion for Judgment on the Pleadings (ECF No. 20) is granted.


IT IS SO ORDERED.


   March 6, 2020                      */s/ Benita Y. Pearson*         
Date                                      Benita Y. Pearson
United States District Judge